IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| THOMAS H. HUDSON * | |
| * | |
| PLAINTIFF * | |
| VS. * | CIVIL ACTION NO. _____ |
| * | |
| * | COMPLAINT AND |
| BAYVIEW LOAN SERVICING, LLC, * | DEMAND FOR A JURY TRIAL |
| EQUIFAX INFORMATION SERVICES, * | |
| L.L.C. AND EXPERIAN INFORMATION * | |
| SOLUTIONS, INC. * | |
| DEFENDANTS * | |

**COMPLAINT**

I. INTRODUCTION

1. Plaintiff brings this action to secure redress from unlawful mortgage servicing practices by defendant Bayview Loan Servicing, LLC ("Bayview") and unfair credit reporting practices engaged in by all defendants. In Count I plaintiff alleges violation of the Cranston-Gonzales amendments to the Real Estate Settlement Procedures Act, 12 U.S.C. §2601, *et seq.* ("RESPA") by Bayview. In Count II plaintiff alleges violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*.

II. JURISDICTION

2. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1337, 15 U.S.C. §1681p, and 12 U.S.C. §2605.

III. PARTIES

3. Plaintiff, Thomas H. Hudson ("Mr. Hudson" or "plaintiff"), is a natural person who resides in East Baton Rouge Parish and is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

4.     Defendant, Bayview is a foreign limited liability corporation authorized to do and doing business in the state of Louisiana, whose registered agent for service of process is Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, LA 70802.

5.     Defendant Equifax Information Services, L.L.C. ("Equifax") is a consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f). Equifax is a foreign limited liability company doing business in the state of Louisiana, who can be served through its registered agent for service of process, Corporation Service Company, 320 Somerulos Street, Baton Rouge, LA 70802.

6.     Defendant Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f). Experian is a foreign corporation doing business in the state of Louisiana, who can be served through its registered agent for service of process, CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

7.     Defendant Bayview is the entity to whom Mr. Hudson makes his monthly mortgage payments discussed below and which sends out periodic statements to Mr. Hudson for his home mortgage loan, the servicing and credit reporting of which is the subject matter of this suit.

8.     Defendant Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

9.     Defendant Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

## IV. FACTUAL ALLEGATIONS

10. Mr. Hudson had a variable rate mortgage on his home serviced or owned by Wells Fargo Home Mortgage ("Wells Fargo").

11. Mr. Hudson had had drywall installed in his home and it was later discovered to be "Chinese" drywall, which caused his home to become uninhabitable and Mr. Hudson had to move out temporarily to another residence.

12. Upon discovery of the Chinese drywall, Wells Fargo agreed to a payment moratorium with Mr. Hudson while Mr. Hudson pursued his claims in the Chinese drywall class action and remediation of the home.

13. In November 2014, Mr. Hudson entered into an agreement for a temporary repayment plan ("repayment plan") of twenty-four (24) months with Wells Fargo beginning in January 1, 2015.

14. This repayment plan was designed to cure any default Mr. Hudson had with his mortgage and was based upon a monthly payment then due of $2027.00 per month, and it required Mr. Hudson to pay $3,618.91 for the duration of the plan, unless modifications were necessary because of changes in the interest rate or escrow analysis.

15. As set forth in the repayment plan, Mr. Hudson accepted this plan by making the first monthly payment.

16. Thereafter the servicing of this mortgage was transferred to defendant Bayview.

17. Bayview then proceeded to ignore the repayment plan and started sending

letters to Mr. Hudson claiming he was in default and threatened foreclosure.

18. Bayview also claimed that Mr. Hudson had not paid his homeowner's insurance and that Wells Fargo had advanced payments for it. Mr. Hudson had paid these insurance payments directly to his insurer.

19. In addition Bayview had notes placed on the door of Mr. Hudson's home asking him to contact it about his mortgage.

20. It was not until December 2015 when Bayview finally recognized the repayment plan was in effect however, it continued afterwards to harass Mr. Hudson with letters every quarter threatening to accelerate and foreclose and place notices on his home's door knob despite Mr. Hudson being current with the repayment plan.

21. These notes have continued to be placed on Mr. Hudson's doorknob during the year preceding this suit being filed.

22. During the repayment plan period, the mortgage adjusted to a lower monthly payment of $1801.78 which should have resulted in Mr. Hudson reinstating his mortgage earlier, however due to Bayview charging sums that were not owed, discussed below, this did not occur.

23. Concerned that Bayview was ignoring the repayment plan, plaintiff sent a letter to Bayview on December 24, 2015 at the address Bayview specified for RESPA letters.

24. This letter to Bayview is a "qualified written request'' and "notice of error" as defined in the Cranston-Gonzales amendment to RESPA, 12 U.S.C. §2605(e).

25. Bayview received this letter to Bayview and responded to it.

26. In violation of its obligations under the Cranston-Gonzales amendment, defendant Bayview failed to take corrective action of recognizing and acknowledging Mr. Hudson's

payments under the repayment plan and that he had made his insurance payments himself, when Bayview claimed he had not and that there had been escrow advances to make these insurance payments.

27. The Cranston-Gonzales amendment to the Real Estate Settlement Procedures Act, 12 U.S.C. §2605(e), provides:

> (e) Duty of loan servicer to respond to borrower inquiries.
>
> (1) Notice of receipt of inquiry
>
> (A) In general
>
> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.
>
> (B) Qualified written request
>
> For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.
> (2) Action with respect to inquiry
> Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
> (B) after conducting an investigation, provide the borrower with a written

explanation or clarification that includes—
(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
© after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
(I) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.
(3) Protection of credit rating
During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of title 15).
(4) Limited extension of response time
The 30-day period described in paragraph (2) may be extended for not more than 15 days if, before the end of such 30-day period, the servicer notifies the borrower of the extension and the reasons for the delay in responding.

28. 12 U.S.C. §2605(f) provides:

(f) Damages and costs. Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) Individuals. In the case of any action by an individual, an amount equal to the

sum of--

any actual damages to the borrower as a result of the failure; and

(2) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $ 2,000....

    (3) Costs. In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

29. Mr. Hudson was also concerned about how Bayview was reporting this account to consumer reporting agencies.

30. In addition to sending this dispute letter to defendant Bayview, Mr. Hudson also mailed a dispute letter regarding the reporting of the Bayview account including his timely payments made under the repayment plan to defendant Equifax on December 24, 2015.

31. Equifax received this dispute letter and it notified Bayview of plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a).

32. Mr. Hudson also mailed a dispute letter the reporting of the Bayview account including his timely payments made under the repayment plan to defendant Experian on December 24, 2015.

33. Experian received this dispute letter and it notified Bayview of plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a).

34. In response to Mr. Hudson's dispute from Equifax, Bayview verified its wrongful reporting of this account to Equifax.

35. In response to Mr. Hudson's dispute from Experian, Bayview verified its wrongful reporting of this account to Experian.

36. In addition to sending this dispute letter to defendant Bayview, Mr. Hudson also mailed a dispute letter regarding the reporting of the Bayview account to defendant Equifax on December 24, 2015.

37. Equifax received this dispute letter and it notified Bayview of plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a).

38. Mr. Hudson also mailed a dispute letter regarding the reporting of the Bayview account to defendant Experian on December 24, 2015.

39. Experian received this dispute letter and it notified Bayview of plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a).

40. In response to Mr. Hudson's dispute from Equifax, Bayview verified its wrongful reporting of this account to Equifax.

41. In response to Mr. Hudson's dispute from Experian, Bayview verified its wrongful reporting of this account to Experian.

42. Mr. Hudson caused to be mailed a second dispute letter regarding the reporting of the Bayview account to defendant Equifax on June 23, 2016.

43. Equifax received this dispute letter and it notified Bayview of plaintiff's disputes pursuant to 15 U.S.C. § 1681i(a).

44. Mr. Hudson also caused a second dispute letter to be mailed regarding the reporting of the Bayview account to defendant Experian on June 23, 2016.

45. Experian received this dispute letter and it notified Bayview of plaintiff's disputes pursuant to 15 U.S.C. § 1681i(a).

46. In response to Mr. Hudson's dispute from Equifax, Bayview verified its

wrongful reporting of this account to Equifax.

47. In response to Mr. Hudson's dispute from Experian, Bayview verified its wrongful reporting of this account to Experian.

48. After receipt of Bayview's responses to Mr. Hudson's dispute, defendant Equifax continues to sell consumer reports regarding Mr. Hudson which contain the wrongful reporting of the Bayview tradeline.

49. After receipt of Bayview's responses to Mr. Hudson's dispute, defendant Experian continues to sell consumer reports regarding Mr. Hudson which contain the wrongful reporting of the Bayview tradeline.

50. On July 8, 2016, plaintiff caused a second letter to be sent to Bayview at the address Bayview specified for RESPA letters which included proof of his payment of the insurance premiums himself, disputing the payment of taxes by Wells Fargo and Bayview, several $75.00 charges for "Miscellaneous Foreclosure and Bankruptcy and REO Expense Disbursements," numerous charges of $11.00 or $14.00 for "Property Preservation," and monthly escrow charges of $334.90 which he contends are not owed at all.

51. The July 8, 2016 letter is a "qualified written request" and "notice of error" as defined in the Cranston-Gonzales amendment to RESPA, 12 U.S.C. §2605(e).

52. Bayview acknowledged receipt of the July 8, 2016 letter.

53. In violation of its obligations under the Cranston-Gonzales amendment, defendant Bayview failed to take any corrective action at all and failed to respond to this letter other than acknowledging receipt of it.

54. Mr. Hudson spent time creating and assisting with both of his RESPA dispute

letters and incurred out-of-pocket expenses related to these RESPA dispute letters, including expenses for preparing, photocopying and obtaining certified mailings of correspondence. He also experienced lost time and inconvenience both in putting the information needed for the RESPA dispute letters and having to educate himself on the RESPA process.

55. Bayview failed to take corrective action within 30 business days of both of the RESPA dispute letters from Mr. Hudson. Specifically, (1) Bayview did not make any necessary corrections to Mr. Hudson's account for both RESPA dispute letters nor did it provide written notification of the correction in response to the July 8, 2016 dispute letter, (2) upon information and belief, Bayview did not conduct any investigation in response to the July 8, 2016 dispute letter; and Bayview did not provide Mr. Hudson with a written explanation nor clarification as to why Bayview believes the account is correct in response to the July 8, 2016 dispute letter, nor (3) after conducting an investigation, Bayview did not provide Mr. Hudson with the information requested, nor provide an explanation why the information sought is unavailable. *See, e.g.*, 12 U.S.C. § 2605(e)(2).

56. Mr. Hudson has also suffered emotional distress flowing from Bayview's violation of RESPA. Mr. Hudson suffers from deep mental anguish that Bayview will persist in not conducting a thorough investigation as is required by 12 U.S.C. § 2605(e)(2) and must presently live with the knowledge that he is routinely making payments that will be subsequently misapplied to his account by Bayview. He also presently lives with the impending dread of a large (and wrongful) payment that would impose a severe hardship on him to pay, and the fear of the resulting wrongful foreclosure that would be instituted if this large payment cannot be made.

### DEFENDANT BAYVIEW'S PRACTICES

57. Bayview's failure to comply with the provisions of RESPA and investigate

and correct the concerns raised by Mr. Hudson have caused him to suffer actual damages in the form of great anxiety, anguish, and worry. It also has caused him actual damages regarding the misapplication of his payments, and incidental time and costs associated with the RESPA dispute letters.

58. Bayview's failure to comply with the provisions of RESPA is part of a pattern and practice of noncompliance and Mr. Hudson is entitled to additional damages under RESPA.

59. Mr. Hudson is further entitled to recover, upon successful prosecution of this action, the costs of this action, including reasonable attorney's fees, for Bayview's violations of RESPA.

60. As a result of defendant Bayview's failure to comply with the requirements of the FCRA, plaintiffs have each suffered actual damages, including damage to each of their reputations, emotional distress, mental anguish, stress, humiliation, aggravation, medical expenses, and denials of credit for which they each seek damages in amounts to be determined by the jury. Plaintiffs also seek punitive damages for each of them in amounts to be determined by the jury.

### DEFENDANT EQUIFAX'S PRACTICES

61. Defendant Equifax negligently and willfully failed to comply with the requirements of FCRA, including but not limited to:

    a. failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports concerning Mr. Hudson, as required by 15 U.S.C. § 1681e(b); and

    b. failing to comply with the reinvestigation requirements in 15 U.S.C. § 1681i(a) as to Mr. Hudson.

62. As a result of defendant Equifax's failures to comply with the requirements of the FCRA, plaintiff has suffered actual damages, including damage to his reputation, emotional distress, mental anguish, stress, humiliation, and aggravation, for which he seeks damages in amounts to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

### DEFENDANT EXPERIAN'S PRACTICES

63. Defendant Experian negligently and willfully failed to comply with the requirements of FCRA, including but not limited to:

   a. failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports concerning Mr. Hudson, as required by 15 U.S.C. § 1681e(b); and

   b. failing to comply with the reinvestigation requirements in 15 U.S.C. § 1681i(a) as to Mr. Hudson.

64. As a result of defendant Experian's failures to comply with the requirements of the FCRA, plaintiff has suffered actual damages, including damage to his reputation, emotional distress, mental anguish, stress, humiliation, and aggravation, for which he seeks damages in amounts to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

WHEREFORE, plaintiff respectfully requests that the Court grant the following relief in his favor and against each defendant for:

   a) Actual damages from Bayview for its violations of the RESPA;

   b) Additional damages from Bayview of $2000 for its violations of

    RESPA;

c) Attorney's fees and costs from Bayview under the RESPA;

d) Actual damages from Bayview for its violations of the FCRA;

e) Punitive damages from Bayview for its violations of the FCRA;

f) Attorney's fees and costs from Bayview under the FCRA;

g) Actual damages from Equifax for its violations of the FCRA;

h) Punitive damages from Equifax for its violations of the FCRA;

i) Attorney's fees and costs from Equifax under the FCRA;

j) Actual damages from Experian for its violations of the FCRA;

k) Punitive damages from Experian for its violations of the FCRA;

l) Attorney's fees and costs from Experian under the FCRA: and

m) Such other and further relief as is appropriate.

A JURY TRIAL IS DEMANDED.

    s/Garth J. Ridge
    **GARTH J. RIDGE**
    Attorney for Plaintiff
    Bar Roll Number:  20589
    251 Florida Street, Suite 301
    Baton Rouge, Louisiana 70801
    Telephone Number:  (225) 343-0700
    Facsimile Number: (225) 343-7700
    E-mail: GarthRidge@aol.com